You may be seated. Our second case of the morning, Messerly v. Boehmke, 413-0397, for the appellant, Mr. McCarthy, for the appellees, Mr. Verticchio, and I'll guess that it is Mr. Verticchio's daughter who will be arguing. You may proceed. Thank you, Your Honor. Please, the court, Ms. Verticchio, even you, Mr. Verticchio. My name is Ed McCarthy, an attorney in Edwardsville, and representing the Messerly plaintiffs herein. I'd like to take just a couple minutes initially to explain how a real estate closing that occurred in 1998 finally ends up here today, and initially, the statute of limitations under the Real Estate Property Disclosure Act is one year. The case was initially filed in Madison County, as Mr. Boehmke was presiding at the time, and after some discovery there, it was determined that perhaps some other parties should be involved in McCoupin County. We voluntarily dismissed, reviled, went through substantial discovery, satisfied ourselves as to how – as to the other parties. Very unfortunately, the counsel for Mr. Boehmke, Dick Minow, passed away during the – in 2008, I think it was, and then Mr. Verticchio entered his appearance in 2009. In the meantime, I had – personally had two bouts of cancer, two operations, and counsel was very gracious, and so were my clients, and so was the court, to put off substantially the discovery and the hearings until finally we arrive here today. And part of that is, of course, that Mr. Verticchio had the right to depose witnesses, and we had to update some of our experts' reports. So, all that comes in to, just about a year ago, as a matter of fact it was in February of last year, that we had the hearing on the motion for summary judgment. The court – okay, let me back up one step. What happened in this case, as far as we understand, is that in 1991, the defendant, Boehmke, noticed cracks, and he says in his affidavit, there's cracks in the wall and on the floor, and he filed a mine subsidence claim with this insurance company, which is State Farm. State Farm then passed it on to the mine subsidence group from the state of Illinois. They did a report, and they came back and said, no, it's not mine subsidence, it's settling. Settling of the structure, foundation, and so forth. That report was sent to Mr. Boehmke, and then later, when he puts his house up for sale in 1998, he fills in part of the residential real property disclosure report. The report, as the court knows, has a series of questions. Back at that time, I think it has a couple more questions now, I think it goes up to 24, but back at that time it went to 22 questions. And Mr. Boehmke did not answer questions 17 through 22. He did answer those above, and one of them, he's about problems with walls. He said, yes, there's a problem with the wall, and then in his explanation, he said that there's no water coming in the crack. Then, 17 through 22, number 17 that he didn't answer was a question about the foundation. If there were problems, mine subsidence, settlement – the word settlement is specifically used – and other foundational problems with the property, he didn't answer that. He answered, I think it was, yeah, item number 8, which is the question about plumbing. He said there's no problems with the plumbing. So he answered no to the problems with the plumbing. My clients then occupied the property, closed the transaction, occupied the property. They found that there were problems with the settling. They found damage to the brickwork, to the façade, and also they experienced plumbing problems. The depositions, my clients talk about what the problems were that they discovered. Now, the case came up on the motion for summary judgment filed by the defendants. The motion for summary judgment was explicit in that it was directed and actually entitled motion for summary judgment on the issue of liability. Counsel, you and the plaintiffs and defendants filed motions for summary judgment. Thank you, Your Honor. Yes, we then filed a counter motion for summary judgment. Okay. And the trial court conducted a hearing on these motions, granted the defendants, and denied yours. Yes, sir. Now, had the defendants not filed a motion for summary judgment, and you did, and the trial court denied your motion, could you have appealed that denial? Interesting question. Is it? Is there any precedent that says you can appeal the denial by the trial court of your motion for summary judgment? Well, I think you can. I could appeal his denial of the plaintiff's motion for summary judgment. Yes, sir. I think that that's appealable. So, what case stands for that? I thought this is an interlocutory order that remains at the trial court level. You could file later motions, or you could file, or just take the case to trial. I'm not aware of what the authority is that says if you file a motion for summary judgment, either side, that the trial court denies, you can appeal the denial. What case is it? I didn't prepare that, sir, so I don't know. Well, the reason I ask it is you're asking us to essentially do the same thing now, only you're before the appellate court because the defendant's motion for summary judgment was granted. And you're arguing that the trial court erred in doing so, but your prayer for relief says, and by the way, when you reverse the trial court granting their motion, you should turn around and in effect grant ours until the trial court on remand grant the defendant's motion for summary judgment. Where is the authority for that? I was – I'm sorry, sir, but I guess what I am – when I filed that, it was a knee-jerk reaction. We're here in the appellate court on the – in this case, and these are the issues that have just been decided by the court. I believe that that – Well, if I find the genuine issue of material fact to be in existence, so as to defeat the claim of the defendant for – on his motion for summary judgment, it doesn't necessarily follow at all that your motion for summary judgment states a good basis. Our motion for summary judgment is based on his – the facts that – of his affidavit, what he said in his affidavit. And essentially the same – along the same line of facts. Yes, sir. That's true. Okay, go ahead. I just wanted to clarify that point. Okay, now, the court is very aware of the standard for granting a summary judgment. And here, the – not only did we have the statement of the plaintiff in his own affidavit, he stated that he received the report that he knew that he asked, because of damage to his foundation, that he asked for an insurance review. And then he came forward and still did not tell us about this – about this issue. And, you know, the statute requires that the seller complete all of the questions. The statute is absolutely clear that the seller is to supply answers to all of these questions. Had the seller answered that question truthfully, the – my clients would know the condition and be able to make an informed decision as to whether to buy. And – which is the whole point of the residential real property disclosure report. I like the statement said in one of the – one of the decisions – I can't remember which one it was – is that the intent of the residential real property disclosure report is for the buyer to learn the same – the very same facts about the property that the seller knows. The seller knew a lot more about this property than he told my clients. And that is where his liability comes into this – into issue here and where his liability is going to be found. Now, taking all the allegations in the motion in a light most favorable to my clients, the plaintiffs, it's apparent that he knew about the problems with the foundation. It's apparent that – or it's apparent that he knew about the problems with the foundation. There's also testimony from my client that Rhonda, the wife, about a discussion with him right after moving in about a problem with the plumbing. And he described in detail the kind of tool to use to get in behind and adjust the plumbing because he's had to do it many times himself. There's a – there's an obvious problem with the plumbing also. Now, on that basis, I don't see how Judge Vlandergan saw that this – that there was anything but a responsibility on the part of the plaintiff – or the defendants to provide this information. And let's see here. You know, as far as my basic presentation to you, everything else is in the briefs. And unless you have questions of me specifically – Item 17 through 22, which we're not checking for yes or no, are not the subject of the defects or do not pertain to the defects at issue. What's your response to that? The – if you look at the affidavit of the defendant himself, he talks about seeing cracks. He talks about receiving information from the – through State Farm Insurance, from the Illinois Mine Subsidence folks, that the problem with this house is settling. That's exactly the term that's used in Item 17. Is there a problem with settling? And that's what the – you know, when we determined to file the suit, we filed the suit before we knew. A lot of this came up in discovery later. Well, I get that. So even if – excuse me – even if Items 18 through 22 do not pertain to the defect at issue, your argument is Item 17 because of the term settle is in there. There's two – Is that correct? Yes, sir. Okay. I see that there's really two areas of liability to the seller here. One is not completing it. That's a problem in itself. But the other is not giving the information, which is the intent of that statute. Get that information out of the seller's brain to the buyer. And that's what's missing. Okay. If there's nothing else, thank you very much. Thank you, counsel. Thank you. Ms. Verticchio, when I announced the case, I said Mr. Verticchio and I presume his daughter. I did not mean by that to diminish your statute before the court. You are, in fact, Ms. Verticchio. You are arguing the case. I was simply thinking in my own mind how pleasant it must be and how rewarding it could be practicing with one's child. But that said, you're the advocate before the court. Thank you, Judge. I appreciate that. May it please the court. As you said, my name is Gina Verticchio, and together with co-counsel, my father, Rick Verticchio, we represent the defendant, Robert Bemke. And despite what you've just heard from opposing counsel, it is our position that the plaintiffs have waived the incomplete items on the Illinois Residential Real Property Disclosure Report by closing 35 days after receipt of this report and that the two major cases that we discussed in his brief are easily distinguishable. There's no dispute here that defendant Apelli filled out the form on August 7, 1998, and that it was provided to the plaintiffs on August 25, 1998, and then they proceeded to a closing on the sale on September 29. It's also undisputed, as counsel pointed out, that defendant Apelli did not fill out lines 17 through 22 of the disclosure report. As Justice Turner pointed out, and he was correct in anticipating our position from reading the brief, items 18 through 22 of the disclosure report deal with defects that are not at issue in this case. And the statute does require that this disclosure report be provided, delivered to the buyer. But it's our position that the plaintiff has placed emphasis on the term all in the all applicable items must be included in the wording. In our interpretation, the proper emphasis is on the use of the word applicable in the all applicable items must be provided in the plain language of the statute. Items 18 through 22 are simply not applicable in this case. They deal with termites, fuel storage tanks, never applied in this case. This leaves us with item 17, which concerns knowledge of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects. How about the, how about 8? 8. Does that play? Concerning, there's, 8 is material defects in the plumbing system. Yes, yes. They did plead that plaintiff had knowledge of material defects in the plumbing system. Well, if they plead for forgetting the settling for a moment, just for putting it over here in the parking lot, given the facts that are before us, how can there not be a dispute about that? Given the alleged conversation about how to fix what appears to be a problem, perhaps the inference might be a recurring problem with that challenge. Well. I mean, I understand, you know, the weight may be on your side, but it's still in dispute. Absolutely. So how do you grant a summary judgment? Now, we dispute that it's in dispute, because part of the, our motion for summary judgment included testimony from the Miserly's deposition. Mr. Miserly stated when asked if he had, what evidence that he had that defendant actually had any knowledge of the alleged plumbing defects, he said he had none. And Mrs. Miserly didn't have much more to say. She said she recalled a telephone conversation with the defendant that he advised that the showerhead in the basement bathroom was sometimes leaky and it needed to be tightened. The looseness of standards does not, a leaked showerhead does not constitute a material defect. She also recalled there was an odor in the basement and that the defendant actually indicated that they may need to change an HVAC hose, which they did themselves, and that alleviated the problem. Counsel stated, he also stated he described a tool that was needed to, a special tool that was needed to do these. The tool that he was talking about was commonly known as a wrench. These suggestions from defendant Eppley were quick fixes from someone who lived in the home. They weren't specialty, it wasn't specialty knowledge. It didn't require specialty tools and didn't even require a professional with specialty knowledge to fix it. They weren't material defects. They were quirks in the home. So that's why it is. But doesn't that require the trial judge to weigh that? I mean, some of it is sensibilities in terms of, you know, whether somebody considers that a defect and whether they later find that there's water damage or, you know, the problem's been going on longer. Doesn't it require the judge to start weighing as opposed to saying maybe, you know, it's pretty, it's not very strong evidence, but it's still an issue, still in dispute. We think that, it's our belief that it was weighed and there was nothing there. So it's so de minimis that it doesn't rise to a whole thing in dispute. It does not raise the level, yes, absolutely. All right. This is my first time in front of the appellate court. So in, as you pointed out, so we believe that the, again, that the emphasis on the applicable items and that items 18 through 22 are basically throwaways at this point. Item 17 is the mindset, science, and settlement and other earth stability defects. It does not concern cracks in the walls. A crack in the wall is not an earth stability defect. Cracks in the walls are dealt with in item four, which defendant appellee affirmatively marked yes, that he did have knowledge in cracking the walls. Plaintiffs have used defendant's failure to complete line, item number 17, coupled with the fact that defendant failed or filed a claim for mind subsidence with his insurance company seven years prior to selling the home that was later denied to allege that the defendant had knowledge of material defects and failed to disclose this info. The facts are undisputed in this case. There's no mind subsidence. There's no evidence of earth stability defects. A letter to the defendant from his insurance carrier denied his claim based on an investigation by the Illinois Mind Subsidence Fund finding that there was no mind subsidence. But doesn't 17 use the word settling? It uses the word settlement, your honor. Settlement. And it's our belief that the use of settlement coupled with further on in 17 or other earth stability defects, that it's going to be a higher level of... You know, I don't want cracks in my basement wall. And if somebody had earlier said, that's not mind subsidence, it's just settlement. Well, he did disclose there were cracks in the basement wall in item four. Right, but is there a sufficient connection between the word settlement and settling to require something be noted on 17? If you add that with the letter from the insurance company. Which makes it sound like this isn't mind subsidence, this is just settling or settlement. Which I guess then in parenthesis it says, hey, any house built anywhere has the potential to settle without there being real foundational issues. But that's an inference. That's not... I don't know if that's an industry standard or not. That's stuff that you don't know. I mean, you might think you know, but don't. So why isn't that something that's in dispute? Because we believe that he... What you're arguing is one check covers two. Yeah, we argue that the check in item four covers three. And what would the third district say about that? The third district... That's the one where you're kind of plugging for, I think, Justice Holder's dissent, the Curtis case. Yes. That because the waiver... Justice Holder's dissent is that the waiver... Right, but part of the reason it's the waiver is that it's not filled out. By extension, if one check covers another check, that's kind of the same thing. It's an argument that, well, the things that are... I guess that's the way I'd see it. The things that we did check are the things that are important. And if you don't care about the other things enough to raise them, then that's waiver or forfeiture. And we believe that the remedy for that is to not go through with bail, but they did. Plaintiff has attempted to use the allegation concerning N17 as perhaps... But, again, there's no evidence to suggest that there are mindset signs or stability defects. But there is evidence that it was settled, the ground was settled. In fact, it's not even disputed, is it? There were cracks in the basement wall. Well, the best evidence... I'm sorry, go ahead. There had been a claim filed. Yeah, there was a claim filed. And after the claim was filed, there was no mind subsiding here, or subsidence, however you pronounce it. But they're settled. Isn't that what was found? And isn't that what was known? Yes. And therefore, shouldn't 17 have been checked as yes? We think that number four was accurate. Number four had the cracks in the basement. The basement just has cracks in the walls. Okay, but how does that address this term, settling or settled? In our opinion, settling is a lower... Every house settles. Settlement would be a more of an... It would just be coupled with air stability defects. It would be a higher level of damage. But I guess the question... One question might be, does every house settle? I don't know of any. I don't know enough, honestly, about construction techniques. Me either. I've been in a lot of houses where the doors still close properly, I guess because it's plumb. And I've been in other houses, mine included, that's much, much older. So, you know, the doors stick or the floor slants or the front stoop settles. I think a lot of houses as they age have those quirks where... I mean, my house is nine years old and we have some cracks in the walls, over doors and things, you know, especially in our area. But that's the whole purpose of the Disclosure Act. Disclose it if you're the seller. Put it out there, and then it's up to the buyer to either further inspect it, ask for it to be repaired, don't sign a contract. That's the whole idea. That's why we have disclosure. Put it down. If you know that the ground has settled, check 17. Did you argue this case before the trial court? I argued it much before the trial court. You did a good job convincing the court that there's no factual issue, but I'm having a hard time thinking that Judge Lonergan got it right when we have the plumbing issue and, you know, and then the failure to check number 17. But you were able to convince him. What was his reasoning as to why there's no factual issue, which would allow you to be granted a summary judgment? That they waived. Just the waiver, basically? The waiver basis, yes. Well, under that theory, couldn't you just waive the whole thing? I mean, waive the whole form, which the Third District says you can't. And he didn't. He provided a form. In a way, though, isn't that kind of worse? There's one thing when you don't even give a form to a buyer. Buyer buys it anyway, maybe doesn't even ask for the disclosure form. But here, we've got your client giving the disclosure form and then just checking boxes that he thinks are applicable. But it seems to me that it would make sense that you would go through the entire form and check everything. If it isn't applicable, put not applicable, or check no, or check yes, not applicable. But just to fail to complete the form, in a way, I know you're saying Curtis may be distinctive, but in a way it's more egregious than even that case would be. Because there's an undertaking here to provide the form. Sure, sure. We respectfully disagree in that he provided the form and provided the knowledge that he had at the time of filling out the form. We do not believe there are any questions of fact as related to causal connections to the incomplete items in the Illinois Residential Real Property Disclosure Report to any of the damages alleged by evidence. I get the sense that you guys disagree with me. Well, not necessarily. Sometimes there are questions. Sometimes you're trying to trick me. No, no. Not trick you, but we want to make sure that we fully understand that all the issues are in position so that we get the right answer. I feel like I'm on my first day of law school again. We think that the defendant making the claim seven years prior that was later denied does not causally connect the defendant's failure to fill out item 17 of the disclosure report. And even if you do apply Curtis, it doesn't relieve the plaintiff from his burden to present allegations and evidence to establish the causal connection between the alleged damages and the failure to complete the disclosure items. Plaintiffs also rely on the Woodsby-Pence case, which the trial court was reversed because of potential causal connection for defendant's failure to disclose past roof repairs. There were four or five roof repairs, and plaintiff's buyer had a leaky roof. And in our case, the defendant did disclose the back walls in item four, but he did not disclose knowledge of the past mine subsidence issue because the investigation showed there wasn't any past mine subsidence issue. We believe that defendant Eppley's failure to complete 17 through 22 of the disclosure report is not causally connected to plaintiff's alleged damages. And my third and final point is that the record did not contain any questions of fact that would have precluded the trial court from entering summary judgment in favor of the defendant Eppley. Plaintiff appellants alleged defects in their third amendment complaint concerning the plumbing system. Defendant denied those allegations. The plaintiffs didn't bring forth any evidence to support the allegations that there were problems with the plumbing system. And I touched on this in the beginning. Mr. Miserly, in deposition, when asked what evidence that he had that the defendant had any knowledge of the alleged plumbing defects, he said he had none. And Ms. Miserly had the conversation concerning the loose showerhead and changing the HVAC pump. We don't believe those are material defects, and we believe that the records presented simply do not establish the existence of any issues of material fact that summary judgment was properly granted. Unless you have any further questions, I yield the record. Just a quick comment. As a matter of personal privilege, Ms. Viticchio, as they say in the legislature, I wanted to mention to you that 45 years ago, I was a prosecutor here in Sangamon County for a few years. And during that time, it was my great privilege to appear repeatedly in front of your grandfather, Paul Viticchio, who was a trial judge and was one of the finest circuit judges I ever had the privilege of being before. I agree with Justice Connick's preliminary remarks, and I just think how proud Paul Viticchio would be to see his granddaughter and son in this courtroom today. Well, thank you. I certainly appreciate that. It's an honor to appear before you today to represent my family. Thank you. Mr. McCarthy. Thank you. I love this calling, describing things as quirks or de minimis. And if that crack, if those cracks, if that condition of that foundation was de minimis, why did the defendant claim he had damage to his property because of foundation problems from mine subsidence? In making a claim himself, he's saying, this is bad. We have to do something about this. Well, there's no indication whatsoever that after he got that report, that he took any steps to further investigate or to repair. And to say that this is de minimis and it should be waived is, you know, incredulous. Now, the thing about causation, as you review the motion for summary judgment, it's titled, On the Issue of Liability. On the Issue of Liability. We never discussed what kind of evidence we had about the nature and extent of these damages. That was never part of this record. The judge, you'll see in the responses, even the quotations that they have here for my client's depositions, they put my client's depositions in and they talk about the damages that they found, but what do they emphasize in their motion? But that, gosh, no, I don't know anything specifically that he said or whatever. And we pointed out the parts of the depositions as we read them in our reply brief, in which they do find the problems. And they do know that the defendant knew about them and the nature and extent of them. And we've got also a list of substantial expert reports. The question in this motion for summary judgment had nothing to do with whether what our expert said was the causation of the, or was not related to what the defendant said. Whatever. We know what you mean. I certainly appreciate that. Thank you very much, gentlemen. Thank you, counsel. We'll take the matter under advisement, recess until the readiness of the next case.